## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL BOWERSOX<br>380 N. Gorsuch Road<br>Westminster, Maryland 21157 | *<br>*<br>* | |
| *Plaintiff*, | * | Civil Action No. 1:19-cv-3350 |
| v. | * | |
| AQUILA FITNESS CONSULTING<br>SYSTEMS, LTD., D/B/A AQUILA, LTD.<br>429 Lenox Avenue<br>Miami Beach, Florida 33139 | *<br>*<br>* | |
| *Serve Registered Agent*:<br>Maryland Agent Service, Inc.<br>8007 Baileys Lane<br>Pasadena, Maryland 21122 | *<br>*<br>* | |
| STACEY CHATMAN<br>1221 Brickell Avenue, Suite 1060<br>Miami, Florida 33131 | *<br>* | |
| *Defendants*. | | |

\* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Michael Bowersox, by and through counsel, LUCHANSKY MILLMAN, files this Original Complaint and Jury Demand against Defendants Aquila Fitness Consulting Systems, Ltd. d/b/a Aquila, Ltd. (hereinafter "Aquila") and Stacey Chatman (collectively "Defendants").

#### INTRODUCTION

1. This lawsuit arises out of Defendants' willful and unlawful conduct in failing to properly compensate Plaintiff for his earned wages.

2. As a result of Defendants' willful failure to properly compensate Plaintiff for all wages due and owing, Defendants are liable for violations of the Fair Labor Standards Act

1

("FLSA"), Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment and Collection Law ("MWPCL").  *See* 29 U.S.C. § 201, *et seq.*; Md. Code Ann., Lab & Empl., §§ 3-401, 501, *et seq.*

3. In addition, Aquila has failed to provide Plaintiff with a reasonable disability accommodation, engaged in unlawful interference with his ability to obtain a disability accommodation, and engaged in unlawful retaliation against Plaintiff for seeking a disability accommodation. These claims have been asserted in a Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). However, since the EEOC has not yet issued a Notice of Right to Sue in this matter, these claims are not presently included in the Complaint. Upon issuance of the EEOC's Notice of Right to Sue, Plaintiff anticipates he may seek leave to amend this Complaint in order to allege that Defendants' failure to provide a reasonable accommodation, retaliation and interference with Plaintiff's rights constituted violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims presented herein pursuant to the FLSA and ADA.

5. The claims set forth pursuant to the MWHL and MWPCL are so related and intertwined with Plaintiff and Plaintiff' claims under the FLSA that they form part of the same case and controversy. Therefore, this Court has supplemental and ancillary jurisdiction over Plaintiff and Plaintiff' State claim relating to Defendants' willful violations of the MWHL and MWPCL.

6. Venue is appropriate in this judicial district because this is a judicial district wherein Defendants conduct business and a district wherein many of the unlawful employment practices described herein are believed to have occurred.

**PARTIES**

**A.** *Plaintiff.*

7. Michael Bowersox lives in the State of Maryland and is employed by Aquila as a Health Fitness Specialist.

**B.** *Defendants*

8. Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that Defendants' officers, directors, vice-principals, agents, servants, regional managers, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine and normal course and scope of employment of Defendants' officers, directors, vice-principals, agents, servants, regional managers or employees.

    i. <u>Aquila.</u>

9. Aquila is health, fitness, wellness and lifestyle management company. Aquila's principle office is in Miami, Florida, and it conducts business in Baltimore, Maryland. Aquila provides on-site management services for a broad spectrum of clients, servicing Fortune 1000 Companies, real-estate firms, multi-use/developers, federal and government agencies, encompassing over 100,000 customers in the United States and overseas.

10. On information and belief, Aquila has over 300 employees.

11. Aquila is subject to the personal jurisdiction of this Court.

12. Aquila may be served at the address listed in the above caption or wherever an appropriate agent for this Defendant may be found.

13. Aquila was Plaintiff's employer as the term "employer" is defined by the FLSA.

14. Aquila was Plaintiff's employer as the term "employer" is defined by the MWHL.

15. Aquila was Plaintiff's employer as the term "employer" is defined by the MWPCL.

16. Aquila was Plaintiff's employer as the term "employer" is defined by the ADA.

17. Aquila engages in interstate commerce.

18. Aquila conducts interstate commerce.

19. Aquila satisfies the enterprise coverage provisions of the FLSA.

20. Aquila has annual revenue in excess of $500,000.

21. Aquila is an employer which is subject to the terms of the FLSA.

22. Aquila is an employer which is subject to the terms of the MWHL.

23. Aquila is an employer which is subject to the terms of the MWPCL.

24. Aquila is an employer which is subject to the terms of the ADA.

  ii. <u>Stacey Chatman</u>

25. On information and belief, Defendant Stacey Chatman is a resident of the State of Maryland.

26. Stacey Chatman is a currently employee of Aquila.

27. Stacey Chapman is employed as a supervisor for Aquila.

28. Stacey Chapman is Plaintiff's direct supervisor.

29. Plaintiff recognizes Stacey Chatman as someone who had the authority to hire and fire employees and did, in fact, hire and fire employees of Aquila. On information and belief,

Stacey Chatman had the authority to establish, and contributed a significant role to establishing, the terms and conditions of Plaintiff's employment.

30. On information and belief, Stacey Chatman instructed, or gave approval of, Plaintiff performing labor for Aquila, for which she knew that Plaintiff was not being properly compensated.

31. Plaintiff recognized that Stacey Chatman had the authority to control and direct the conditions of his employment.

32. On information and belief, Stacey Chatman exercised her control over conditions of Plaintiff's employment by issuing directives to be carried out by her subordinates.

33. On information and belief, Stacey Chatman knew of and authorized the illegal pay practices described herein.

34. On information and belief, Stacey Chatman was responsible for the payment of Plaintiff's wages.

35. On information and belief, Stacey Chatman was fully aware and approved of the illegal pay practices described herein.

### PROCEDURAL PREREQUISITES

36. The following procedural prerequisites apply to Plaintiff's anticipated future ADA Count.

37. Plaintiff timely filed with the EEOC a charge of employment discrimination against the Aquila on the basis of disability. This charge is presently pending before the EEOC.

38. While an ADA Count is not presently included in this Complaint, it is expected that Plaintiff may seek leave to amend this Complaint and add an ADA Count upon Plaintiff exhausting his administrative remedies.

## FACTUAL ALLEGATIONS

**A.**   *Uncompensated overtime hours worked.*

39.   Throughout the last three years of his employment with Aquila, Plaintiff was a non-exempt employees pursuant to the FLSA.

40.   Throughout the last three years of his employment with Aquila, Plaintiff was a non-exempt employees pursuant to the MWHL.

41.   Hours worked by the Plaintiff varied, but Plaintiff commonly worked throughout the week, at multiple locations in a day and typically 40 or more hours per week. By way of illustration, during many workweeks Plaintiff worked between 40–50 hours per workweek.

42.   Defendants followed a policy and practice of requiring, or knowingly permitting, Plaintiff to work over 40 hours in a workweek and refusing to compensate Plaintiff at the legally required overtime rate of time-and-one-half.

43.   Plaintiff is compensated at a regular, straight time rate of approximately $16.92 per hour.

     a.   <u>Creating bulletins.</u>

44.   Chatman assigns Plaintiff to draft bulletins.

45.   Chatman assigns Plaintiff to draft bulletins while at home and off-the-clock.

46.   Chatman is aware that Plaintiff has drafted bulletins while at home and off-the-clock.

47.   Bulletins are used by Aquila to announce classes, promote themes, provide nutrition information, provide fitness tips, and other pertinent information.

48.   Plaintiff has been assigned and required to draft bulletins from home and while off-the-clock throughout his employment with Aquila.

49. Drafting bulletins can take between approximately two to six hours to perform.

50. Since Plaintiff is required to draft bulletins while off-the-clock, Plaintiff receives no compensation for drafting bulletins.

51. Drafting bulletins is a compensable activity.

52. Aquila did not compensate Plaintiff for drafting bulletins.

53. Aquila threatens to discipline employees who do not comply with creating bulletins.

54. Chatman issued Plaintiff a written discipline in or about 2018 for a failure to timely produce a bulletin.

    b. <u>Exercise certifications.</u>

55. Chatman has instructed Plaintiff to obtain exercise certifications.

56. Chatman has informed Plaintiff that he is required to obtain certain exercise certifications.

57. Exercise certifications allow Plaintiff, in his employment for Aquila as a Health Fitness Specialist, to teach additional classes and/or exercises in his capacity as a Health Fitness Specialist for Aquila.

58. Exercise certifications are directly related to Plaintiff's employment with Aquila as a Health Fitness Specialist.

59. Exercise certifications are designed to make Plaintiff handle his job more effectively as a Health Fitness Specialist.

60. Exercise certifications are not intended to prepare Plaintiff for another job or to teach him a new or additional skill that is not considered directly related to Plaintiff's job with Aquila.

61. Exercise certifications apply to Plaintiff's specific job as a Health Fitness Specialist; *i.e.* exercise certifications do *not* provide for better performance in the workplace in general.

62. Exercise certifications provide Plaintiff no benefit outside of his employment.

63. Chatman has instructed Plaintiff to obtain exercise certifications while off-the-clock and outside of his regular working hours.

64. Due to Chatman's instruction, and involuntarily, Plaintiff obtained three exercise certifications during his employment with Aquila.

65. Plaintiff's exercise certifications, and the related courses, are directly related to his job duties as a Health Fitness Specialist and his employment with Aquila.

66. Chatman has led Plaintiff to believe that his present working conditions, or his continued employment, would be adversely affected if he did not obtain exercise certifications.

67. Plaintiff obtaining exercise certifications at the direction of Chatman was a compensable activity.

68. Aquila did not compensate Plaintiff for obtaining exercise certification.

69. All time expended by Plaintiff obtaining exercise certification was off-the-clock and without compensation.

70. The amount of time expended in obtaining an exercise certification can vary between approximately 8 and 27 hours, all of which Plaintiff performed off-the-clock and for which Aquila refused to compensate Plaintiff.

71. Aquila threatens discipline to employees who do not obtain exercise certifications.

72. On information and belief, Chatman has issued and/or threatened discipline against employees of Aquila who have not obtained exercise certifications.

73. Chatman conducts employee performance evaluations.

74. In conducting an employee performance evaluation, part of Chatman's evaluation of an employee is based upon whether the employee obtained exercise certifications.

75. Chatman's performance evaluation of Plaintiff reflects that she took into consideration Plaintiff obtaining excursive certifications.

    c.    <u>Meal breaks.</u>

76. Plaintiff was provided a period for a meal break.

77. At the beginning of Plaintiff's employment, the meal break period provided to Plaintiff was automatically deducted from his wages.

78. At some point, Aquila discontinued its policy of automatically deducting meal breaks. It is presently unknown to Plaintiff when this policy change occurred.

79. During the period of the automatic meal break deduction, irrespective of whether Plaintiff received his meal break, the time for the meal break was automatically deducted from his hourly wages.

80. During the period of the automatic meal break deduction period, Aquila did not inform Plaintiff of any system or process for Plaintiff to report that he did not receive a meal break and to not have his wages improperly reduced.

81. On many occasions, Plaintiff worked through his meal break period and without being compensated.

82. In addition, Plaintiff regularly performed a "working lunch," during which he was not completely relieved of his work responsibilities during his meal break and continued performing work on behalf of Aquila during her meal beak.

83. Chatman was aware that Plaintiff would not receive a meal break and have his wages deducted nonetheless, and Chatman was aware of Plaintiff performing unpaid "working lunches."

      d.    <u>Extended, non-paid breaks.</u>

84. Defendants required Plaintiff to take extended, non-paid breaks.

85. Extended breaks required that Plaintiff work a schedule that was interrupted by long, non-paid break periods established by the Defendants. When Plaintiff was assigned extended breaks, the extended break period was longer than a bona fide meal period (*e.g.*, longer than 90 minutes), did not serve the actual purpose of providing Plaintiff a meal break, and demonstrated an ulterior motive by Defendants to occupy Plaintiff and ensure his immediate availability while not compensating him.

86. Aquila unlawfully treated the extended break as an unpaid, bona fide meal break.

87. Aquila was the beneficiary of Plaintiff being assigned extended breaks.

88. When Defendants assigned Plaintiff extended breaks, Plaintiff had not requested the extended break for his own convenience.

89. Extended breaks were assigned in the sole discretion of Aquila and for Aquila's benefit.

90. By way of illustration, and not limitation, an extended break assigned by Aquila may involve a schedule where Plaintiff was assigned to work from approximately 5:30 a.m. to approximately 1:30 p.m., Plaintiff was then assigned to take an approximately three hour meal

break, and Plaintiff was then assigned to return at approximately 4:30 p.m. and continue working the remainder of the shift.

91. Since Aquila takes unfair advantage of Plaintiff by assigning him extended breaks, and since extended breaks do not constitute bona fide meal breaks, Aquila is required to compensate Plaintiff for the extended break period.

**B.** *Failure to accurately track all hours worked.*

92. Aquila had a duty to maintain accurate records of all hours worked by Plaintiff.

93. Aquila failed to maintain accurate records of all hours worked by Plaintiff.

94. By way of illustration, Plaintiff was regularly required to work additional hours which were not recorded and for which he was not compensated. Some of these unrecorded, off-clock hours are described *infra*.

95. Aquila's failure to maintain accurate records of all hours worked by Plaintiff was willful.

96. At times, Aquila did not use any time tracking system to track hours worked by Plaintiff.

97. Defendants were aware that they were not accurately recording all of the hours worked by Plaintiff.

98. Aquila adhered to a policy whereby it refused to pay Plaintiff for hours worked which went beyond those otherwise scheduled by Aquila.

**C.** *Defendants acted "willfully" in carrying out their unlawful pay practices.*

99. Defendants acted willfully, as that term is used in the context of the FLSA in their failure to properly compensate Plaintiff.

100. Defendants knew, or had reason to know, that Plaintiff was performing work, which was for the benefit of Defendants, while Plaintiff was not receiving the legally required compensation.

101. This knowledge derives from the various facts described herein, including, but not limited to, instructing Plaintiff to create bulletins while off the clock, instructing Plaintiff to obtain exercise certifications while off the clock, and deducting time from Plaintiff's wages for breaks which Plaintiff did not properly receive.

102. Despite the fact that Defendants knew, or had reason to know, that Plaintiff was performing work for Defendants' benefit during periods when Plaintiff was not being compensated properly, Defendants continued to allow Plaintiff to perform this work and failed to properly compensate Plaintiff for the work performed.

103. Despite the fact that Defendants, on information and belief, were aware of the applicable wage and hour laws, Defendants failed to comply with these laws.

104. Defendants carried out the above described illegal pay practices for the purpose of compensating Plaintiff less than he was legally entitled to receive.

**[D.** *ADA violation* – **SECTION RESERVED]**

105. **[*This section is reserved for the option of Plaintiff to seek leave of Court in order to add an ADA claim after Plaintiff has exhausted administrative remedies*.]**

**COUNT I**
**Violation of the Fair Labor Standards Act – Overtime Wages**
**(Asserted against all Defendants)**

106. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

107. This count arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. section 207, for Defendants' failure to pay overtime wages to Plaintiff for all time worked in excess of forty hours per week.

108. Plaintiff was regularly directed by Defendants to work, and did so work, in excess of 40 hours in one or more individual work weeks.

109. Defendants required Plaintiff to work hours for which he was not compensated at all, including hours that were worked in excess of 40 hours in one or more individual work weeks.

110. Pursuant to 29 U.S.C. section 207, for all weeks during which Plaintiff worked in excess of 40 hours, Plaintiff was entitled to be compensated at a rate of one-and-one-half times her regular rate of pay for the time worked in excess of 40 hours.

111. Defendants did not compensate Plaintiff at a rate of one-and-one-half times Plaintiff's regular rate for all time worked in excess of 40 hours in individual workweeks.

112. Defendants' failure to pay overtime wages for time worked in excess of 40 hours per week and its failure to pay Plaintiff entirely for certain work performed was a violation of the Fair Labor Standards Act, 29 U.S.C. section 201, *et seq*.

113. Defendants' failure and refusal to pay all wages owned was a willful violation of Fair Labor Standards Act, 29 U.S.C. section 207, *et seq*.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

    a. Judgment against Defendants for violation of the wage provisions of the FLSA;

    b. Judgment that Defendants' violations as described above were willful;

    c. An award in an amount equal to Plaintiff's unpaid back wages owed;

d. An award to Plaintiff of unpaid wages owed, liquidated damages and penalties where provided by law, and interest thereon, subject to proof at trial;

e. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. 216 section and/or any other applicable laws;

f. An award of prejudgment interest to the extent liquidated damages are not awarded;

g. Award of reasonable attorneys' fees and costs in the event of an appeal, as well as post-judgment interest consistent with applicable law; and

h. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

**COUNT II**
**Maryland Wage and Hour Law**
**Md. Code Ann., Lab & Empl. § 3-401,** *et seq.*
**Failure to pay wages owed for all hours worked and failure to pay overtime**
**(Asserted against all Defendants)**

114. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

115. Plaintiff was not paid for all hours actually worked, Plaintiff is protected by the MWHL, and Plaintiff is entitled to be paid at Plaintiff's regular hourly rate for each hour worked. Md. Code Ann., Lab & Empl. § 3-401, *et seq.*

116. Defendants did not compensate Plaintiff her regular hourly rate for each hour worked.

117. Defendants' failure to pay Plaintiff the appropriate wages for all hours worked violated MWHL.

118. Plaintiff was entitled to be compensated for all hours worked and to be compensated at 1.5 times her regular hourly wage for each hour worked over 40 in a single workweek.

119. Defendants did not compensate Plaintiff for all hours worked and did not compensate Plaintiff at 1.5 times her regular hourly wage for each hour worked over 40 in a single workweek.

120. Defendants' failure to compensate Plaintiff at 1.5 times her regular hourly wage for each hour in excess of 40 hours per workweek violated the MWHL.

121. As a direct and proximate result of Defendants' violations of the MWHL, Plaintiff suffered significant damages.

122. Pursuant to the MWHL, Defendants are liable to Plaintiff for all hours worked which were not compensated and for the difference between the wages paid to Plaintiff and the wages required by statute, plus reasonable attorneys' fees, pre- and post- judgment interest, fees and costs.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

   a. Judgment against Defendants for violation of the overtime provisions of the MWHL;

   b. Judgment that Defendants' violations as described above were willful;

   c. An award in an amount equal to all unpaid back wages for Plaintiff;

   d. An award to Plaintiff for the amount of unpaid wages owed, up to treble damages and penalties where provided by law, and interest thereon, subject to proof at trial;

   e. An award of reasonable attorneys' fees and costs pursuant to the MWHL and all other applicable laws;

f. An award of prejudgment interest to the extent liquidated or treble damages are not awarded;

g. Award of reasonable attorneys' fees and costs in the event of an appeal, as well as post-judgment interest consistent with applicable law; and

h. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

**COUNT III**
**Maryland Wage Payment and Collection Law**
**Md. Code Ann., Lab & Empl. § 3-501,** *et seq.*
**(Asserted against all Defendants)**

123. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

124. Plaintiff was Defendants' "employee" pursuant to § 3-501 and § 3-502 of the MWPCL.

125. Defendants were Plaintiff's "employers" pursuant to § 3-501 and § 3-502 of the MWPCL.

126. As Plaintiff's "employers," Defendants were obligated to pay Plaintiff all wages due for the work that was performed, including overtime wages.

127. As outlined above, Defendants failed to compensate Plaintiff for overtime wages owed.

128. Defendants' failure and refusal to pay overtime wages to Plaintiff were not the result of a *bona fide* dispute.

WHEREFORE, Plaintiff demands entry of a money judgment against Defendants in an amount equal to three times (3x) the amount of all unpaid wages that Defendants failed to pay Plaintiff and all wages improperly deducted, attorneys' fees, costs, and expenses of this action

incurred as a result of Defendants' failure to pay Plaintiff what was legally owed, and for such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems proper.

### COUNT IV – RESERVED
### Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101, *et seq.*
### (Asserted against Aquila Only)

129. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

130. As noted in paragraph 3, above, Plaintiff has filed a charge of discrimination with the EEOC on the basis of disability discrimination and pursuant to the ADA. Upon administrative exhaustion, Plaintiff anticipates he may seek leave of the Court to amend this Complaint and add an ADA count to this lawsuit.

131. Until that time, Plaintiff expressly reserves the right to seek leave of Court in order to amend and assert his ADA claim upon exhaustion of his administrative remedies.

### JURY DEMAND

132. Plaintiff demands a trial by jury on all issues triable to a jury.

(Signatures appear on next page.)

Dated: November 21, 2019

Respectfully submitted,

/s/ *Judd G. Millman*
Judd G. Millman (Fed. Bar No. 18212)
 judd@luchanskylaw.com
Bruce M. Luchansky (Fed. Bar No. 08439)
 lucky@luchanskylaw.com
Joseph B. Wolf (Fed. Bar No. 27882)
 joseph@luchanskylaw.com
LUCHANSKY MILLMAN
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
Facsimile: (410) 522-1021
*Attorneys for Plaintiff Michael Bowersox*